UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD REID and CRYSTAL CUEVAS, individually and on behalf of other persons similarly situated who were employed by PRIMERICA FINANCIAL SERVICES AGENCY OF NEW YORK, INC. or PFS INVESTMENTS INC.,<br><br>                Plaintiffs,<br><br>        -against-<br><br>PRIMERICA FINANCIAL SERVICES AGENCY OF NEW YORK, INC.; PFS INVESTMENTS INC.; and related entities,<br><br>                Defendants. | ECF CASE<br><br>14 Civ. 7796 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND TO STAY OR DISMISS THE PROCEEDINGS**

Defendants Primerica Financial Services Agency of New York, Inc. ("PFSNY") and PFS Investments Inc. ("PFSI") respectfully submit this memorandum of law in support of their motion seeking an order (i) compelling Plaintiffs Richard Reid and Crystal Cuevas to arbitrate their claims in this case and (ii) staying further litigation of Plaintiffs' claims in this case.

## PRELIMINARY STATEMENT

This case belongs in arbitration. Reid and Cuevas each signed contracts agreeing to arbitrate any disputes they might have with Defendants. In derogation of that commitment, they instead filed suit in New York State Supreme Court. Defendants have removed this case to this Court, and now move under the Federal Arbitration Act to compel Reid and Cuevas to honor their obligations and to arbitrate this dispute.[1]

When Plaintiffs Richard Reid and Crystal Cuevas joined the Primerica Companies, they acknowledged they were "independent contractors" permitted to offer financial products of those companies, including PFSNY and PFSI. Despite this contractual agreement, Reid and Cuevas allege that they were misclassified as independent contractors and should instead be treated as "employees." They purport to seek unpaid wages and overtime under New York law. These claims are meritless and contrary to rulings by the United States Department of Labor and the Internal Revenue Service specifically finding that Primerica agents are independent contractors.

---

[1] In a companion action, Primerica Financial Services, Inc. ("Primerica") has also petitioned to compel arbitration of this same dispute. While Primerica is not itself a defendant in the action brought by Reid and Cuevas—that is, this case—Primerica is an affiliate of a group of related Primerica Companies including each Defendant here, and Primerica has standing under Reid and Cuevas's contracts to enforce their arbitration agreements and compel them to arbitrate these claims. The Defendants and Primerica have designated the two cases as related, as the motions in each seek the same relief: arbitration of Reid and Cuevas's claims.

There can be no debate that Reid and Cuevas agreed to arbitrate any dispute with any Primerica Company, including Defendants, and there is no question that the scope of that arbitration agreement covers the claims asserted by Reid and Cuevas in this case. The Federal Arbitration Act's strong public policy in favor of arbitration requires that Reid and Cuevas arbitrate this dispute. Numerous courts have upheld that public policy by compelling arbitration in similar wage and hour class actions, and federal courts across the country have enforced agreements to arbitrate in disputes between Primerica agents and the Primerica Companies.

This Court should reach the same result. It should therefore compel Plaintiffs Richard Reid and Crystal Cuevas to arbitrate their claims in this case, and stay further litigation of Plaintiffs' claims.

## STATEMENT OF MATERIAL FACTS

Defendants draw these facts from the Complaint, the accompanying Declaration of Robert H. Peterman ("Peterman Decl."), and the exhibits thereto.

### The Primerica Companies

For almost forty years, Primerica Financial Services, Inc. ("Primerica") and its affiliated companies, including Defendants PFSNY and PFSI, have offered a variety of insurance and financial products across the United States. (Peterman Decl. ¶¶ 1 –2.) The Primerica Companies provide these products and services to middle-income households, a segment of the population often neglected by other financial companies.

The Primerica Companies market their products and services through a network of independent contractors, known as Primerica agents. The vast majority of Primerica agents conduct their Primerica business on a part-time basis to earn supplemental income.

## The Primerica Application and Agent's Agreement to Arbitrate

In New York, every person desiring to become a Primerica agent must complete and submit to Primerica a New York Independent Business Application ("IBA"). (*Id.* ¶ 3.) Reid and Cuevas both became independent Primerica agents by completing IBAs. Reid was an agent for approximately fifteen months. He submitted an IBA on May 20, 2011, became an agent on May 25, 2011 until November 1, 2012, when his contracts terminated. (*Id.* ¶ 8.) Reid also recruited Cuevas to become an independent Primerica agent. (*Id.* ¶ 11.) She submitted an IBA on February 9, 2012, became an agent on February 15, 2012 until and her contracts terminated on March 23, 2013, after approximately eleven months. (*Id.*)

The IBA may be completed either in paper form or on an electronic device, such as a computer or tablet. (*Id.* ¶¶ 6–7, 9.) The paper IBA is composed of an application and a series of contracts, including Primerica's "Basic Agreement" with the agent. (*Id.* ¶ 7.) The electronic IBA requires the applicant be provided with an IBA Supplement, which contains a series of contracts that also includes the Basic Agreement. (*Id.* ¶¶ 9–10.)

As a precondition to any relationship with the Primerica Companies, every agent must agree to the terms and conditions of the Basic Agreement. (*Id.* ¶ 5.) Each agent therefore must acknowledge receipt and acceptance of the various contracts that are provided, including the Basic Agreement, before submitting the IBA. (*Id.*)

In large typeface and all-capital, bolded lettering, the Basic Agreement informs prospective Primerica agents that "**THIS IS A BINDING CONTRACT**" and instructs them to "**READ IT CAREFULLY.**" (*Id.* Ex. A, at 11 (emphasis in original); *id.* Ex. C, at 8.) Approximately one quarter of the Basic Agreement is dedicated to making it clear that any dispute between an agent and any "Primerica Company" must be resolved

3

through arbitration.  (*See id.* Ex. A at 12, ¶ 15 (the "Arbitration Clause").)  "Primerica

Company" is expressly defined as "Primerica and other companies authorized by Primerica

to enter into agreements with, or to offer products or services through, agents," (*id.* at 11,

¶ 1), and thus includes Defendants PFSNY and PFSI.  (*Id.* ¶ 2.)

Primerica has used the same arbitration language in its Basic Agreement at

all times relevant to this case.  (*Id.* ¶ 3.)  The Arbitration Clause states:

> [A]ny dispute between you and a Primerica Company . . .
> will be settled solely through good faith negotiation . . . or,
> if that fails, binding arbitration.  "Dispute" means any type
> of dispute in any way related to your relationship with a
> Primerica Company that under law may be submitted by
> agreement to binding arbitration, including allegations of
> . . . violation of federal, state or local statutes, Rules or
> regulations.

(*Id.* Ex. A, at 12, ¶ 15(a).)  Reid and Cuevas each signed versions of the IBA in which they

agreed to be bound by Basic Agreements containing this Arbitration Clause. (*See id.* ¶¶ 8,

11; *see also id.* Ex. B; *id.* Ex. D, at 5.)

The Arbitration Clause requires arbitration before the American Arbitration

Association ("AAA") or, if the agent prefers it to the AAA, before JAMS.  (*Id.* Ex. A, at

12, ¶ 15(a).)  It also includes an express waiver of class-action disputes:  "no dispute

subject to arbitration under this section shall be consolidated with any other agent's dispute

or prosecuted as a class action, except as agreed by all parties."  (*Id.* at 12, ¶ 15(b).)

The Arbitration Clause further states that "[e]ach Primerica Company . . . is

intended to be a third party beneficiary of this provision and has the same right to enforce

it as do you and Primerica."  (*Id.*)  And all Primerica companies adopt and incorporate the

Arbitration Clause of the Basic Agreement into their other contracts with sales agents.

(*See, e.g., id.* at 13.)  PFSNY and PFSI thus possess the authority to enforce the agreement

to arbitrate on behalf of themselves and all other Primerica Companies.  (*Id.* ¶ 3.)

4

Reid (but not Cuevas) became licensed to sell securities products and thus entered into a supplemental PFS Investments Inc. Registered Representative Agreement ("RRA").  (*Id.* ¶¶ 13, 15.)  The RRA incorporates the Arbitration Clause in the Basic Agreement, but also provides that a dispute arising out of an agent's securities business will be arbitrated before FINRA, as long as it is a dispute over which FINRA exercises jurisdiction.  Where FINRA will not arbitrate the dispute, the Basic Agreement governs and the claim is arbitrated before the AAA or, at the agent's election, JAMS.  Because Reid never sold any securities products, (*id.* ¶ 14), and because he has purported to assert class-action claims that FINRA will not hear, pursuant to his RRA his claims are governed by the Arbitration Clause in the Basic Agreement.  (*Id.* ¶ 13.)

### This Action

In direct violation of their arbitration agreement with the Primerica Companies, Reid and Cuevas filed this action on July 23, 2014.  All of the claims asserted fall squarely within the scope of the Arbitration Clause.

### ARGUMENT

I.    **This Court Should Compel Arbitration of all the Alleged Claims**

A.    **Federal Law Requires Enforcement of the Arbitration Clause**

The federal government recognizes the importance of private arbitration as a matter of public policy.  Congress enacted the Federal Arbitration Act to turn this "strong federal policy" into law, *Dean Witter Reynolds, Inc.* v. *Byrd,* 470 U.S. 213, 217, 219-21 (1985), and made it applicable to all contracts governing all working relationships, except those involving transportation workers. *Circuit City Stores, Inc.* v. *Adams*, 532 U.S. 105, 119 (2001).  Moreover, the Basic Agreement—to which Reid, Cuevas, and all of the

putative class members agreed to be bound—states that "[t]he Federal Arbitration Act will govern [its] interpretation and enforcement." (Peterman Decl. Ex. A. at 12, ¶ 15(b).)

Consistent with the strong policy in favor of arbitration, the FAA expressly requires courts to enforce written private agreements to arbitrate disputes, declaring:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon any such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). The FAA thus embodies "a congressional declaration of a liberal federal policy favoring arbitration agreements," requiring that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Consistent with this strong federal policy and the unambiguous language of the Basic Agreement, courts across the country regularly have enforced Primerica's Arbitration Clause and compelled numerous state court disputes to arbitration.[2] And the

---

[2]  *See, e.g., Primerica Financial Services, Inc.* v. *DiUrales*, No. 02 Civ. 2893, 2002 WL 31844901 (E.D. La. Dec. 15, 2002); Gibbs v. *PFS Inv., Inc.*, No. 02 Civ. 266 (E.D. Va. filed Jul. 11, 2002); *Primerica Fin. Servs., Inc.* v. *Rodgers*, No. 02 Civ. 6-D-B (N.D. Miss. filed Apr. 19, 2002); *Primerica Fin. Servs., Inc.* v. *Absher*, Nos. 01 Civ. 562, 01 Civ. 694, 01 Civ. 695, 01 Civ. 696, 01 Civ. 697, 01 Civ. 698, 01 Civ. 699 (N.D. Ga. filed Oct. 11, 2001); *Primerica Fin. Servs., Inc.*, No. 01 Civ. 48 (N.D. Miss. filed Oct. 2, 2001); *Pare* v. *Primerica Fin. Servs., Inc.*, No. 00 E 105 (N.H. Sup. Ct. filed Oct. 10, 2000); *Frain* v. *Meyer*, No. 98 Civ. 5850 (D.N.J. filed Aug. 25, 1999); *Bisbal* v. *Primerica Ins. Mktg. Serv. of P.R., Inc.*, KLCE9801312 (P.R. Cir. Ct. App. filed Mar. 8, 1999); *Oliveras* v. *Primerica Life Ins. Co.*, KLCE9900304 (P.R. Ct. First Inst. filed Jan. 13, 1999); *Primerica Fin. Servs., Inc.* v. *Archer*, No. 96 Civ. 1515 (N.D. Ga. filed Sep. 10, 1996); *Primerica Fin. Servs., Inc.* v. *Chussler*, No. 95 Civ. 6482 (D.N.J. filed Apr. 29, 1996); *Terrill* v. *Schechter*, No. L 3443 95 (N.J. Super. Ct. Law Div. filed Jan. 23, 1996); *McGrath* v. *Payne and PFS, Inc.*, No. 94 Civ. 165 (D. Vt. filed Mar. 9, 1995); *Primerica Fin. Servs., Inc.* v. *Goddard*, No. 94 Civ. 482 (N.D. Ga. filed Nov. 10, 1994); *Wise* v. *Primerica Fin. Servs., Inc.*, No. E 12241 (Fulton Cnty. Ct. filed Feb. 18, 1994); *First Am. Nat'l Secs., Inc.* v. *Mauldin*, No. 92 Civ. 1401 (N.D. Ala. filed Aug. 14, 1992); *Primerica Fin. Servs., Inc.* v. *Harvey*, Nos. 91 Civ. 545, 91 Civ. 546,

claims in this case—putative wage and hour class claims—mirror those that the Second Circuit and this Court routinely have compelled to be arbitrated.[3]  There is nothing about this case that counsels for a different result.

**B.     The Claims in this Case Are Covered by the Arbitration Clause**

Under the FAA, the Court engages in a two-step inquiry, determining "(1) whether there exists a valid agreement to arbitrate at all and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co.* v. *Swiss Reins Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001).  With regard to the claims in this case, the answer to both inquiries is "yes."

**A Valid Agreement to Arbitrate:**  Reid and Cuevas signed IBAs in which they expressly agreed to be bound by the Basic Agreement, including its Arbitration Clause.  Reid did so on May 20, 2011, and Cuevas on February 9, 2012.  (Peterman Decl. ¶¶ 8, 11.)  Acknowledgment of, and agreement to, the Basic Agreement is a prerequisite for becoming a Primerica agent, (*id.* ¶ 5), and each of Reid and Cuevas—and all members

---

91 Civ. 547, 91 Civ. 558, 91 Civ. 559, 91 Civ. 706, 91 Civ. 1265, 91 Civ. 1331, 91 Civ. 1332, 91 Civ. 1374, 91 Civ. 1423, 91 Civ. 1432 (N.D. Ga. filed Apr. 27, 1992); *Primerica Fin. Servs., Inc.* v. *Kirkland*, No. 91 Civ. 1330 (N.D. Ga. filed Nov. 14, 1991); *A.L. Williams Corp.* v. *DeLong*, No. 90 Civ. 2050 (N.D. Ga. filed Feb. 4, 1991); *ALW Mktg. Corp.* v. *Stewart*, No. 90 Civ. 446 (N.D. Ga. filed Dec. 5, 1990); *A.L. Williams Corp.* v. *Lewis*, No. 90 Civ. 1583 (N.D. Ga. filed Aug. 30, 1990); *ALW Mktg. Corp.* v. *Matthews*, No. 90 Civ. 292 (N.D. Ga. filed Aug. 21, 1990); *ALW Mktg. Corp.* v. *Baker*, No. 90 Civ. 445 (N.D. Ga. filed Mar. 28, 1990); *A.L. Williams & Assocs.* v. *Stelk*, No. 89 Civ. 622 (N.D. Ga. filed Sep. 22, 1989); *A.L. Williams & Assocs.* v. *McMahon*, 697 F. Supp. 488 (N.D. Ga. 1988).

[3]   *See, e.g.*, *Sutherland* v. *Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) (holding that, under FAA, district court should have compelled arbitration of plaintiff's class claims under federal Fair Labor Standards Act and New York Labor Law); *Raniere* v. *Citigroup Inc.*, 533 F. App'x 11 (2d Cir. 2013) (same); *Greene* v. *Subcontracting Concepts, L.L.C.*, No. 13 Civ. 1500, 2014 WL 1087999 (S.D.N.Y. Mar. 19, 2014) (applying principle that "courts must rigorously enforce arbitration agreements" to compel arbitration of class action wage and hour claims); *Cohen* v. *UBS Fin. Servs., Inc.*, No. 12 Civ. 2147, 2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012) (same).

of the purported class— signed such an acknowledgment during their application process, before submitting an IBA to Primerica.

**Encompassing This Dispute:**  All claims alleged by Reid and Cuevas fall under the Arbitration Clause of the Basic Agreement, which encompasses "any dispute" that either Reid or Cuevas has with any Primerica Company.  (*Id.* Ex. A at 12, ¶ 15(a).)  The provision is not limited to certain types of claims.  It governs any dispute.[4]

Courts regularly enforce such provisions governing "all disputes."  Under the FAA, "where the agreement contains a 'broad' arbitration clause, such as the one at issue here, purporting to submit to arbitration 'any controversy . . . ,' the strong presumption in favor of arbitrability has been held to apply with even greater force." *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Shaddock*, 822 F. Supp. 125, 132 (S.D.N.Y. 1993) (collecting cases).  Reid and Cuevas allege that they were not independent contractors, but instead "employees," and are therefore entitled to wages and overtime under Articles 6 and 19 of the New York Labor Law and Section 12 of the New York Codes, Rules, and Regulations.  That dispute goes to the heart of their relationship with Defendants—a relationship that began when each of Reid and Cuevas agreed to the Basic Agreement containing the applicable Arbitration Clause.  These are the precise sorts of claims the Second Circuit routinely has compelled to arbitration.  *See, e.g.*, *Sutherland*, 726 F.3d at 290; *Raniere*, 533 F. App'x at 11.  The law in this Circuit is therefore indisputably that contractual agreements which require individual arbitration of class-based wage and hour claims, such as the Basic Agreement, are enforceable.

---

[4]   Even absent its breadth, the Arbitration Clause provides examples of covered claims, one of which is alleged violations of state statutes or rules, (Peterson Decl. Ex. A, at 12, ¶ 15(a))—the exact sort of claims alleged by Reid and Cuevas in this case.

Once this Court finds that there is an arbitration agreement covering the alleged claims, Congress has declared by statute that the Court must compel arbitration: "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4 (emphasis added); *see also Dean Witter*, 470 U.S. at 218 ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that the district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original).

Following this mandate, courts around the country consistently have enforced the same Arbitration Clause to compel arbitration of disputes between agents and Primerica Companies under circumstances directly comparable to this case. *See supra* note 2. This Court should reach the same result, and should compel Plaintiffs to arbitrate their alleged claims before the AAA, or, if they prefer, before JAMS, as required by the terms of the Basic Agreement.

### C.     Reid's RRA is No Impediment to Compelling Arbitration

Despite Plaintiffs' agreement to arbitrate, we believe that Reid will argue that his claims are not subject to arbitration because he signed the RRA and FINRA will not accept class-action claims. The provision of the RRA upon which Reid will apparently rely, however, addresses only claims that arise "in connection with" an agent's securities business, (Peterman Decl. Ex. F, at 1, ¶ 4), and Reid sold no securities products. (*Id.* ¶ 14.) Moreover, FINRA's unwillingness to arbitrate class claims is expressly addressed by the RRA. In that contract, Reid agreed that the Arbitration Clause of the Basic Agreement will govern in any dispute "over which FINRA does not exercise jurisdiction." (*Id.* Ex. F, at 1, ¶ 4.) As a result, Reid's claims must be arbitrated by the AAA or, at Reid's election,

JAMS. *See Cohen* v. *UBS Fin. Servs., Inc.*, No. 12 Civ. 2147, 2012 WL 6041634, at *3 (S.D.N.Y. Dec. 4, 2012) (observing that FINRA's rules are contractual in nature and "parties may contract beyond the default arbitration rules of the securities industry"); *GFI Brokers LLC* v. *Bellard*, 2013 N.Y. Slip Op. 31624(U), at *6 (N.Y. Sup. Ct. Jul. 16, 2013) (observing that parties may specify alternative methods of resolution "if FINRA did not agree to arbitrate" in recognition "that not all disputes are eligible for FINRA arbitration – i.e., class actions").

## II.     This Action Should Be Stayed or Dismissed

Under the FAA, if the Court concludes that Reid and Cuevas must arbitrate their claims, then the Court must either stay or dismiss this action pending the outcome of that arbitration.  As a statutory matter, the FAA compels at the least the entry of a stay: upon determining that a dispute is subject to arbitration, the Court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also McMahan Sec. Co.* v. *Forum Capital Mkts L.P.*, 35 F.3d 82, 85–86 (2d Cir. 1994) ("[T]he FAA leaves no discretion with the district court in the matter."). There is additional case law authority permitting dismissal of the action outright, rather than the imposition of a stay.   *See Ryan* v. *JP Morgan Chase & Co.*, 924 F. Supp. 2d 559, 562 (S.D.N.Y. 2013) (collecting cases).  As many courts have observed, judicial economy is far better served by dismissal. *See, e.g.*, *Germosen* v. *ABM Indus. Corp.*, No. 13 Civ. 1978, 2014 WL 4211347, at *7 (S.D.N.Y. Aug. 26, 2014) (dismissing action "as all of Plaintiff's claims are arbitrable and 'no useful purpose will be served by granting a stay of these proceedings.'") (quoting *Berger* v. *Cantor Fitzgerald Secs.*, 967 F. Supp. 91, 96 (S.D.N.Y. 1997)); *Reynolds* v. *de Silva*, No. 09 Civ. 9218, 2010 WL 743510, at *8–9 (S.D.N.Y. Feb. 24, 2010) (staying action "would be an inefficient use of the Court's

docket").  Accordingly, where all of Plaintiffs' claims are subject to arbitration, as here, courts routinely opt for dismissal.  *See, e.g.*, *Germosen*, 2014 WL 4211347; *Thomas* v. *Public Storage, Inc.*, 957 F. Supp. 2d 496 (S.D.N.Y. 2013); *Ryan*, 924 F. Supp. 2d 559; *Reynolds*, 2010 WL 743510; *Drakeford* v. *Wash. Mut.*, No. 07 Civ. 3489, 2008 WL 2755838 (S.D.N.Y. July 11, 2008); *Rubin* v. *Sona Int'l Corp.*, 457 F. Supp. 2d 191 (S.D.N.Y. 2006); *Lewis Tree Serv., Inc.* v. *Lucent Techs. Inc.*, 239 F. Supp. 2d 332 (S.D.N.Y. 2002).

       In addition, and as an initial matter, this Court should also stay this case while it considers this motion to compel arbitration.  The authority to do so is "incidental to the power inherent in every court to control the disposition of the cause on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis* v. *N. Am. Co.*, 299 U.S. 248, 254 (1936).  And this Court has broad discretion to grant a stay when it serves the interest of judicial economy and efficiency.  *Limonium Maritime, S.A.* v. *Mizushima Marinera, S.A.*, 201 F.3d 431, 431 (2d Cir. 1999) (citing *Clinton* v. *Jones*, 520 U.S. 681, 706 (1997)); *see also DaPuzzo* v. *Globalvest Mgmt. Co.*, 263 F. Supp. 2d 714, 741 (S.D.N.Y. 2003).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court enter an order (i) compelling Plaintiffs Richard Reid and Crystal Cuevas to arbitrate their claims in this case and (ii) barring Plaintiffs from further litigating those or any other claims against any Primerica Company, in state or federal court." In making this motion, Defendants do not waive, and herein expressly reserve, all applicable defenses to Plaintiffs' claims.

Dated: September 30, 2014
      New York, New York

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

By: _____

Jay Cohen, Esq.
Eric Alan Stone, Esq.
1285 Avenue of the Americas
New York, New York 10019
Tel:  (212) 373-3000
Fax:  (212) 757-3990
jaycohen@paulweiss.com
estone@paulweiss.com

-and-

William J. Anthony
JACKSON LEWIS P.C.
18 Corporate Woods Boulevard
Albany, NY 12211
Tel:  (518) 434-1300
Fax:  (518) 427-5956
AnthonyW@jacksonlewis.com

*Counsel for Defendants Primerica Financial Services Agency of New York, Inc. and PFS Investments Inc.*

12